IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| THE PETRAM GROUP, LLC and GLORIA SWOYER, <br><br> Plaintiffs, <br><br> vs. <br><br> PURIFIED RESOURCE PARTNERS, LLC, <br><br> Defendant. | CV 25-80-BLG-TJC <br><br> **ORDER** |

Plaintiffs The Petram Group, LLC ("Petram") and Gloria Swoyer ("Swoyer") (collectively "Plaintiffs") bring this action to quite title, and for associated declaratory and injunctive relief against Defendant Purified Resource Partners, LLC ("Purified"). (Doc. 1.)  Presently before the Court is Purified's Motion to Dismiss (Doc. 13), which is fully briefed and ripe for the Court's review.  Having considered the parties' submissions, the Court finds the motion should be **DENIED**, as set forth below.

**I.    BACKGROUND**[1]

Both Petram and Purified are limited liability companies involved in the acquisition of mineral rights.  Swoyer is an individual who resides in Sheldon,

---

[1] For the purposes of this motion, the Court accepts as true the allegations contained in the Complaint.  *Wyler Summit P'ship v. Turner Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

1

Iowa, and is the former owner of certain minerals located in Richland County, Montana. Specifically, the disputed minerals owned by Swoyer are in Sections 6 and 7 of Township 24 North, Range 59 East, M.P.M., Richland County, Montana (the "Minerals").

On November 17, 2023, Jeremiah Hagen, Petram's head of Business Development, contacted Swoyer by phone to indicate Petram's interest in purchasing the Minerals from Swoyer. Swoyer did not agree to sell the Minerals to Petram at that time, but they agreed to stay in touch.

On July 3, 2024, Hagen again contacted Swoyer by phone and offered to purchase the Minerals within Section 7 at a higher price than he had offered before. Following the call, Hagen sent Swoyer a written offer by overnight mail to purchase twenty net mineral acres in Section 7 for $112,000.

On July 10, 2024, Petram received the executed Purchase and Sales Agreement ("PSA") from Swoyer and an executed Mineral Deed transferring the Minerals in Section 7 to Petram. On July 22, 2024, Petram sent Swoyer an earnest money payment of $5,000 in accord with the terms of the July 10, 2024 PSA for the Minerals in Section 7.

Also on July 10, 2024, Petram sent Swoyer a separate written offer by overnight mail to purchase 22.59 net mineral acres in Section 6 for $126,504. On July 24, 2024, Petram received the executed PSA from Swoyer for the Minerals in

Section 6. On August 5, 2024, Petram sent Swoyer an earnest money payment of $5,000 consistent with the terms of the July 24, 2024 PSA for the Minerals in Section 6.

In the meantime, by letter dated July 10, 2024, Purified mailed Swoyer an offer to purchase the Minerals. Purified offered to purchase the Minerals from Swoyer for $106,500. Purified included a deed in the materials that it mailed to Swoyer (the "Purified Deed").

On August 6, 2024, Swoyer executed the Purified Deed. Plaintiffs allege that at the time Swoyer executed the deed, she mistakenly believed the Purified Deed was associated with her sale of the Minerals to Petram. Swoyer returned the Purified Deed with wire instructions for payment in a pre-addressed green envelope that had been included with the materials Purified sent to her.

On August 8, 2024, Petram sent a "Prepare to Close" letter to Swoyer by overnight mail. The closing package included a final draft Mineral Deed conveying the Minerals in both Sections 6 and 7 from Swoyer to Petram (the "Petram Deed"). The letter was delivered to Swoyer on August 10, 2024.

On August 12, 2024, Hagen spoke to Swoyer by telephone. During the conversation, Swoyer advised Hagen that she had returned the deed and wiring instructions to Petram in a green envelope that had been provided to her. This

concerned Hagen because Petram does not use green envelopes in its closing packages.

The next day, on August, 13, 2024, Petram received the executed Petram Deed from Swoyer that it had sent her in the August 8, 2024 closing package. The same day, Hagen called Swoyer to obtain wire instructions so that Petram could pay Swoyer and complete the transaction. Swoyer told Hagen that she had sent Petram her wire payment information in the previously mailed green envelope.

On August 14, 2024, Petram transmitted payment by wire to Swoyer in the amount of $112,000 for the Minerals in Section 7 and $126,504 for the Minerals in Section 6.

On August 16, 2024, Purified recorded the Purified Deed in the Richland County property records.

Three days later, on August 19, 2024, Petram recorded the Petram Deed to the same Minerals in the Richland County property records.

The next day, on August 20, 2024, Purified's Co-Owner, Kaleb Dasinger, emailed Petram. Dasinger asserted that Purified owned the Minerals and attached a copy of the Purified Deed.

On or about August 26, 2024, Swoyer received a check from Purified in the amount of $106,500. Swoyer did not cash the check. Rather, by letter dated August 28, 2024, Swoyer advised Purified that she mistakenly signed and

notarized the Purified Deed under the belief that the Purified Deed was associated with her sale to Petram.  Swoyer returned the Purified check uncashed, and requested the Purified execute and record a corrective deed reversing the Purified Deed.

On September 12, 2024, Swoyer received a response letter from Purified, declining to cooperate with her request.  Purified also returned the check for $106,500 to Swoyer.  Swoyer has not cashed the check or otherwise accepted it as payment for the Minerals.

On October 1, 2024, Petram's counsel contacted Purified by letter, requesting Purified take immediate action to reverse the Purified Deed.  Purified did not respond to the letter.

Thereafter, Petram and Swoyer instituted this action, seeking to quiet title in the Minerals and for a declaration that Petram is the rightful owner of the Minerals.

Purified now moves to dismiss the Complaint under Rule 12(b)(6) and 12(b)(7), arguing Plaintiffs have failed to state a claim and failed to join necessary parties.

## II.    LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is proper when the pleading either "(1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013)

(quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted).  Nor does a pleading "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, 550 U.S. at 570).  A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*.  "[W]here the

6

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679.

Dismissal under Rule 12(b)(7) is appropriate when the non-movant has failed to join a required party, as defined by Rule 19. Fed. R. Civ. P. 12(b)(7). When considering a motion to dismiss under Rule 12(b)(7), the moving party has the burden to demonstrate that the nonparty must be joined. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

### III.   DISCUSSION

#### A.   Rule 12(b)(6) Failure to State a Claim

Purified argues Plaintiffs fail to state a claim because the factual allegations in the Complaint acknowledge that Purified is a bona fide purchaser who recorded its deed first. Plaintiffs counter that they allege facts, which if proven true, would establish Purified does not meet the criteria of a bona fide purchaser, and thus the timing of Purified's recordation is irrelevant.

When multiple purchasers hold conflicting interests in a given property, the state's recording statutes accord priority of right. In Montana, a race-notice recording system applies. *Earl v. Pavex, Corp.*, 313 P.3d 154, 160 (Mont. 2013). Generally, under a race-notice recording system, "a subsequent purchaser has priority over an earlier purchaser if the subsequent purchaser (1) lacks notice of the

prior conveyance *and* (2) records his conveyance before the prior conveyance is recorded." *Id.*

Montana's race-notice statue specifically provides that "[e]very conveyance of real property . . . is void against any subsequent purchaser or encumbrancer . . . of the same property or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded." Mont. Code Ann. § 70-21-304. The Montana Supreme Court has equated "good faith" under the race-notice statute with the standard for a bona fide purchaser. *Northland Royalty Corp. v. Engel*, 339 P.3d 599, 601 (Mont. 2014) (citing *Luloff v. Blackburn*, 906 P.2d 189, 191 (Mont. 1995)). In *Luloff*, the Court explained that a bona fide purchaser is:

> [1] one who at the time of his purchase advances a new consideration, surrenders some security, or does some other act which leaves him in a worse position if his purchase should be set aside; and [2] purchases in the honest belief that his vendor had a right to sell, without notice, actual or constructive of any adverse rights, claims, interest, or equities of other in and to the property sold.

*Luloff*, 906 P.2d at 191 (citing *Foster v. Winstanley*, 102 P. 574, 579 (Mont. 1909).

Here, Plaintiffs argue that even though Purified recorded its deed first, it does not qualify as a bona fide purchaser because it had not made any payment to Swoyer for the Minerals at the time the Purified Deed was recorded. Plaintiffs point to the factual allegations in the Complaint that Purified recorded the Purified

8

Deed on August 16, 2024 (Doc. 1 at ¶ 21), and that Swoyer did not receive a check from Purified until August 26, 2024 (*Id.* at ¶ 24).  Plaintiffs further assert that Purified was on notice of Petram's claim to the Minerals before Purified advanced the consideration to Swoyer to complete its acquisition of the Minerals.  Petram points out that Purified contacted Petram to assert its claim to the Minerals on August 20, 2024, the day after Petram recorded the Petram Deed.  (*Id.* at ¶¶ 22-23.)

      Purified counters that the Complaint alleges only when Swoyer received its check, not when Purified advanced the payment to Swoyer.  Nevertheless, the Complaint alleges that Swoyer did not receive a check from Purified until August 26, 2024, ten days after Purified recorded its deed, seven days after Petram recorded its deed, and at least six days after Purified had notice of Petram's adverse claim to the property.  The Court is required at this stage of the proceeding to construe the Complaint liberally and to draw reasonable inferences from the allegations in Petram's favor.  *National Rife Ass'n of America v. Vullo*, 602 U.S. 175, 181 (2024).  Applying this standard, the facts alleged in the Complaint are sufficient to plausibly allege that Purified did not advance new consideration at the time of the purchase of the Minerals, and did have actual or constructive notice of adverse claims and interest to the Minerals prior to providing consideration for the purchase.  Thus, Petram has pled sufficient facts to plausibly allege that Purified was not a boda fide purchaser under the race-notice statute.

Therefore, at this stage of the proceedings, and under the applicable Rule 12(b)(6) standard, the Court finds Petram's allegations are sufficient to state a plausible quiet title claim. Accordingly, the Court does not find dismissal of the Complaint is appropriate at this time.

### B.   Rule 12(b)(7) Failure to Join Party Under Rule 19

Purified next argues Plaintiffs have failed to properly join all required parties pursuant to Rule 19, and therefore, the Complaint should be dismissed pursuant to Rule 12(b)(7). Purified contends that in order for Plaintiffs to maintain a quiet title action as to real property located in Montana, they "*must* add unknown parties" in accordance with Mont. Code Ann. § 70-28-104, and Plaintiffs "*must* file a lis pendens" per § 70-28-106. (Doc. 13-1 at 4 (emphasis added).) Purified further contends that "service upon all defendants known and unknown *must* be made" under §70-28-107. (*Id.* (emphasis added).)

Purified's argument is not well-founded. Mont. Code Ann. § 70-28-104 allows, but does not require, a plaintiff to join all unknown parties. Specifically, § 70-28-104 provides that in any action brought to quiet title, "the plaintiff *may* join as defendants any or all persons, known or unknown . . . ." Mont. Code Ann. §70-28-104(1) (emphasis added). Thus, the statute is plainly permissive, not mandatory.

In the event a plaintiff desires to obtain complete adjudication of the title to

real estate, including as to unknown persons, the statutory scheme requires the plaintiff to "add[] in the caption of the complaint in the action the words 'and all other persons, unknown, claiming or who might claim any right, title, estate or interest in or lien or encumbrance upon the real property described in the complaint adverse to plaintiff's ownership or any cloud upon plaintiff's title, whether the claim or possible claim is present or contingent.'" Mont. Code. Ann. § 70-28-104(2). If the plaintiff elects to include unknown parties in the complaint, then the plaintiff must also file a lis pendens, Mont. Code Ann. § 70-28-106, and serve all unknown defendants, Mont. Code Ann. § 70-28-107.

But where, as here, Plaintiffs chose to proceed solely against a known party, Plaintiffs were not required to name or serve any unknown persons. Of course, any relief the Court may grant Plaintiffs in this action will not bind any unnamed defendant. Nevertheless, Plaintiffs' decision not to join unnamed defendants in this action does not subject the Complaint to dismissal.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Purified's Motion to Dismiss (Doc. 13) is **DENIED**.

DATED this 19th day of February, 2026.

                                                _____
                                                TIMOTHY J. CAVAN
                                                United States Magistrate Judge